**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SETH ERIC FIRKUS, | No. 2:16-CV-0300-JAM-CMK |
| Plaintiff, | |
| vs. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____/

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pending before the court are plaintiff's motion for summary judgment (Doc. 24) and defendant's cross-motion for summary judgment (Doc. 27).

/ / /

/ / /

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on April 7, 2008.  See CAR 137.[1]  In the application, plaintiff claims that disability began on April 1, 2007.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 17, 2010, before Administrative Law Judge ("ALJ") James P. Berry.  See id.  In a June 23, 2010, decision, the ALJ concluded that plaintiff is not disabled.

The Appeals Council granted review and remanded for further proceedings.  In its August 27, 2012, order, the Appeal Council stated:

> The hearing decision finds that the claimant had severe impairments of benign pituitary tumor, status post-tumor resection and obesity but did not find the claimant's acromegaly to be severe and did not develop the evidence pertaining to this condition.
>
> Id. at 152.

The Appeals Council directed the ALJ to "[o]btain additional evidence concerning the claimant's neurology in order to complete the administrative record. . . ."  Id. at 153.  The Appeals Council noted that such evidence "may include, if warranted and available" a consultative examination.  Id.  The Appeals Council also stated that the ALJ will "if necessary" obtain testimony from a medical expert.  Id.  The ALJ was also directed to "[g]ive further consideration" to treating source opinions and plaintiff's maximum residual functional capacity.  Id.  As to treating sources, the Appeals Council stated: "As appropriate, the Administrative Law Judge may request the treating sources to provide additional evidence and/or further clarification of the opinions. . . ."  Id.  Finally, the Appeals Council stated that the ALJ should obtain supplemental vocational expert testimony "[i]f warranted by the expanded record. . . ."  Id.

/ / /

/ / /

---

[1] Citations are to the Certified Administrative Record lodged on December 29, 2016 (Doc. 25).

A new hearing was held on January 23, 2014, before ALJ Danny Pittman. See CAR 11. In a March 11, 2014, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): history of acromegaly and prolactinoma status post surgical resection and radiation therapy; osteoarthritis; obstructive sleep apnea; carpal tunnel syndrome; obesity/gigantism' and mild cardiomyopathy;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: the claimant can lift and carry no more than 10 pounds; stand and walk 2 hours in an 8-hour workday; sit 6-8 hours in an 8-hour workday; frequently manipulate; occasionally balance, stoop, kneel, crouch, crawl, ,and climb; and
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> See id. at 13-22.

After the Appeals Council declined further review on December 15, 2015, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v.

3

Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to comply with the Appeals Council's remand order by obtaining additional evidence concerning plaintiff's neurology; (2) the ALJ "erred by performing an inaccurate analysis of Plaintiff's impairments at Steps 2 and 3;" and (3) the ALJ improperly rejected the opinions of treating sources.

### A. Compliance with Appeals Council Remand Order

The Appeals Council directed the ALJ to "[o]btain additional evidence concerning the claimant's neurology in order to complete the administrative record." Plaintiff argues:

> Instead of obtaining a consultative examination from a neurologist, however, the agency sent Plaintiff to a physiatrist and rehabilitation doctor. As explained by prior counsel in a letter to the first ALJ after the Appeals Council remand Dr. Vesali, the consultative examiner, is of the wrong specialty to evaluate Plaintiff's complicated physical condition resulting from his massive brain tumor. Dr. Vesali never mentioned Plaintiff's acromegaly, only that his diagnosis was of status post resection of pituitary tumor. (Tr. 470). She also failed to mention any medical records or findings after 2008. For these reasons, prior counsel asked that Dr. Vesali's report not be considered, and that Plaintiff be sent to the proper specialist (Tr. 470-71). This was never done.
> The Council also suggested obtaining evidence "from a medical expert to clarify the nature and severity of the claimant's impairments[.]" (Tr. 153). With such a complicated and unusual disorder before him, one would think the ALJ would have heeded the Appeals Council and called

4

for the testimony of a medical expert at the hearing. This was not done. Particularly in a case such as this, with neurological, hormonal, and musculoskeletal implications, one would think that a medical expert would have been of great help to the ALJ.

The court agrees with defendant that the proper inquiry in an action under 42 U.S.C. § 405(g) does not include "whether or how well the ALJ complied with the Appeals Council's remand order." Little v. Colvin, 1:14-CV-0795-SKO, 2016 WL 323747, *14 (E.D. Cal. 2016). In declining further review in December 2015, the Appeals Council indicated that it was satisfied with the ALJ's compliance with the remand order.

## B.    Analysis at Steps 2 and 3

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2]  In determining at step 2 of the 5-step sequential analysis whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own

---

[2]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

statement of symptoms alone is insufficient.  See id.

At step 3, the Commissioner must consider the Listings.  The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

### 1. Step 2

Regarding the severity of plaintiff's impairments, the ALJ acknowledged that he must consider impairments singly and in combination.  See CAR 12.  The ALJ then found that the following impairments are severe: (1) acromegaly and prolactinoma status post surgical resection and radiation therapy; (2) osteoarthritis; (3) obstructive sleep apnea; (4) carpal tunnel syndrome; (5) obesity/gigantism; and (6) mild cardiomyopathy.  See id. at 13.  Finally, the ALJ stated:

> . . .The claimant's history of vision and hearing problems, hypertension, history of vertigo, plantar fasciitis, hyperprolactinemia, and hypogonadism are medically determinable, but non-severe.  These impairments have minimal effect on the claimant's ability to work.
>
> Id. at 14.

According to plaintiff:

> Instead of realizing that Plaintiff has a rare endocrine disorder, similar to cancer, with many related impairments, the ALJ considered all of Plaintiff's varies disorders separately.  By so doing, he failed to consider Plaintiff's impairments in combination, as he is required to do. . . ."

///

///

///

Plaintiff adds:

> . . .Although, this time, he did find acromegaly to be a severe impairment, he found hypogonadism and hyperprolactinemia to be non-severe impairments, even though they are manifestations of the hormonal imbalance caused by the pituitary tumor. The ALJ also seems to not to connect Plaintiff's impairments in hearing and vision with the pressure inside Plaintiff's cranium caused by the massive tumor. . . .

Plaintiff's argument is unpersuasive. Plaintiff has not met his burden of presenting evidence that the impairments the ALJ found to be non-severe have more than a minimal effect on his ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert, 841 F.2d at 306 (9th Cir. 1988) (adopting SSR 85-28); 20 C.F.R. §§ 404.1508, 416.908 (outlining the claimant's burden of proof).

2. <u>Step 3</u>

As to the Listings, the ALJ stated: "The impairments listed in Appendix 1, Subpart P, CFR Part 404, which are most nearly applicable to the claimant's medically determinable impairments, particularly sections 1.00, 2.00, 4.01, 9.00, 12.04, and 14.09, have been reviewed and the criteria are not met or medically equaled." CAR 15. Plaintiff argues that the ALJ erred by not considering the category of neoplastic diseases described in Listing 13.00, particularly Listing 13.02. According to plaintiff:

> . . .It is important to remember that the crux of Plaintiff's impairments is a brain tumor, which, also having its roots in his pituitary gland, was large enough to crowd out other areas of Plaintiff's brain and encroach upon neurological and vascular structure. That the tumor was not cancerous does not change the similarities to the elements of the Listing for brain tumor at Listing 13.02. As in 13.02A, Plaintiff has an unresectable tumor. And, as in 13.02B, there has been persistent or recurrent disease following initial therapy. Plaintiff meets both elements, although ony [sic] one is required for a meeting of the Listing. Also interesting is subsection E, which directs the agency to "Consider under a disability until at least 18 months from the date of diagnosis. Thereafter, evaluate any residual impairment(s) under the criterial for the affected body system." Listing 13.02E.

/ / /

/ / /

7

The court finds no error in the ALJ's step-3 analysis with respect to Listing 13.02. It is undisputed that plaintiff's tumor was not cancerous. As defendant notes, the Listings must be construed strictly, see Kennedy v. Colvin, 738 F.3d 1172 (9th Cir. 2013), and Listing 13.02 is inapplicable on its face because that listing pertains only to malignant cancers, see 20 C.F.R. Part 404, Subpart P, Appendix 13.00.

### C.    Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

without other evidence, is insufficient to reject the opinion of a treating or examining

professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

see also Magallanes, 881 F.2d at 751.

   In this case, the ALJ primarily relied on the opinion of consultative examining

physiatrist, Dr. Fariba Vesali, to whom plaintiff was referred pursuant to the Appeals Council's

remand order.  As to this source, the ALJ stated:

> The claimant was seen by consultative physiatrist Fariba Vesali, M.D., in
> August 2013.  The doctor reviewed the claimant's medical records and
> conducted a neurological medical examination.  The claimant presented
> with complaints of status post excision of pituitary tumor in 2008.  The
> claimant had vision problems prior to his surgery, which significantly
> improved following the excision.  He reported he had daily headaches,
> which were exacerbated by heat, bilateral knee pain, constant low back
> pain, and occasional neck pain.  Dr. Vesali observed all range of motion
> testing was within normal limits, Phalen's test was positive bilaterally, and
> he had decreased sensation in his bilateral hands.  The claimant displayed
> tenderness in his bilateral wrists, bilateral knees, and lumbar spine.  He
> was diagnosed with status post resection of pituitary tumor in 2008;
> bilateral CTS; bilateral knee pain; and chronic headaches.  Dr. Vesali
> opined the claimant had the residual functional capacity to lift and carry 50
> pounds occasionally and 25 pounds frequently, and stand, sit, and walk up
> to in two-hour increments, for a total of 6 hours in an 8-hour workday.  He
> was able to frequently reach, handle, finger, feel, push and pull with his
> bilateral hands, and frequently operate foot controls with his bilateral feet.
> The claimant was capable of frequent stooping, kneeling, crouching,
> crawling, and climbing.  He was able to frequently work around moving
> mechanical parts, operate a motor vehicle, work around humidity and
> wetness, be exposed to dust, odors, fumes and pulmonary irritants, work in
> extreme cold or heat, and around vibrations.  The claimant should avoid
> working in very loud environments (Exhibit 31F).
>
>    * * *

/ / /

. . .Dr. Vesali performed a thorough, well-documented neurological examination of the claimant, finding him capable of performing at a medium exertional level (Exhibit 31F). I give his opinion considerable weight to the extent of the manipulative limitations. However, I limited the claimant to a sedentary functional capacity based upon the evidence of bilateral knee osteoarthritis. . . .

CAR 17, 19.

Plaintiff argues that the ALJ improperly rejected the opinions of treating sources, Drs. Fernandez-Renedo, Boggan,[3] Ko, and Barragan.

### 1.  Dr. Barragan

As to Dr. Barragan, the ALJ stated:

Dr. Humberto Barragan, the claimant's treating physician, completed a Physical Residual Functional Capacity Questionnaire in October 2009.  He diagnosed the claimant with hyperthyroidism, hypogonadism, acromegaly, and status post-resection and radiation.  Dr. Barragan stated the claimant's symptoms included arthralgias, fatigue, and weakness.  Dr. Barragan estimated the claimant could walk 2-3 blocks, could sit for 2 hours, stand for 1 hour, and could stand, walk, or sit a total of 2 hours in an 8-hour workday.  Further, he opined the claimant must be permitted to walk around every 30 minutes, must be permitted to sit and stand at will, and must be permitted to elevate his legs 30-40% of the workday.  The doctor stated the claimant could lift and carry 20 pounds occasionally, and 10 pounds frequently as well as occasionally stoop, crouch, and climb ladders.  He could rarely climb stairs.  It was the doctor's opinion the claimant would miss more than 4 days of work each month because of his impairments (Exhibit 20F).  Dr. Barragan completed three letters between December 2009 and March 2010 stating that the claimant had undergone surgery to remove his tumor, but continued to suffer joint aches and other generalized symptoms, which were not responding well to treatment.  He also said the claimant had early signs of heart failure making control of his weight difficult.  The doctor also indicated the claimant was unable to engage in any significant physical activity because of his medical problems (Exhibits 25F, 26F, 28F).

                                        * * *

. . .Primary care physician Dr. Barragan opined Mr. Firkus was unable to engage in any physical activity due to the combination of his impairments (Exhibit 20F).  However, he ignores the positive results from the claimant's surgery and radiation treatment (Exhibits 18F; 23F, p. 10; 24F, pp. 3, 6).  Additionally, the claimant's congestive heart failure was

---

[3]     Dr. Boggan is erroneously referred to by plaintiff as "Dr. Goggan."

characterized as mild, which does not support the exertional limitations assigned by Dr. Barragan (Exhibit 17F). Therefore, I accord his opinion little weight. . . .

CAR 16-17, 19.

Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting Dr. Barragan's opinions.

The court agrees. The ALJ accorded Dr. Barragan's opinions "little weight" because "he [Dr. Barragan] ignores the positive results from the claimant's surgery and radiation treatment" and "the claimant's congestive heart failure was characterized as mild." The ALJ fails, however, to explain how these facts relate to specific opinions rendered by Dr. Barragan such that this court is able to review whether the ALJ's rejection of the doctor's opinions is supported by substantial evidence. For example, the ALJ does not explain how his observation that plaintiff's congestive heart failure was described as mild relates to the very specific and restrictive limitations noted by Dr. Barragan, which could also be attributed to other impairments found to be severe, such as osteoarthritis, obstructive sleep apnea, obesity/gigantism. Nor does the ALJ explain how the doctor's opinions are undermined by positive results from surgery and radiation therapy. Given these deficiencies, the court cannot say that the ALJ has satisfied even the deferential "specific and legitimate" test of making a finding based on an interpretation of the evidence specific to the opinions rendered by Dr. Barragan. See Magallanes, 881 F.2d at 751-55. The matter should be remanded for a more detailed consideration of Dr. Barragan's opinions.

2. Dr. Boggan

As to Dr. Boggan, the ALJ stated:

The same form [Physical Residual Functional Capacity Questionnaire] was completed by James E. Boggan, M.D., a neurosurgeon, in February 2010. Dr. Boggan diagnosed the claimant with acromegaly and a pituitary tumor, and symptoms included gigantism, visual loss, and arthritis. Dr. Boggan stated the claimant had arthritic knees. The claimant had been treated with medication, including Bromocridtine and Somatostatin, hormone replacements, and radiation therapy. The doctor indicated in a typical workday the claimant would frequently experience pain or other symptoms, which would be severe enough to interfere with his attention

11

and concentration. It was Dr. Boggan's opinion that the claimant could walk less than one Block. He was unable to provide any further functional evaluations (Exhibit 19F).

* * *

. . .I give no weight to the opinion of Dr. Boggan who was unable to provide functional limitations. His opinion was therefore an incomplete functional assessment (Exhibit 19F). . . .

CAR 17, 19.

Citing <u>Reed v. Massanari</u>, 270 F.3d 838 (9th Cir. 2001), and <u>Brown v. Heckler</u>, 713 F.2d 441 (9th Cir. 1983), plaintiff argues that the ALJ's rationale is inadequate because the ALJ has a duty to recontact a medical source where the medical evidence is incomplete and, in this case, the ALJ failed to do so.

The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered. <u>See</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. <u>See</u> <u>id.</u> This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." <u>Cox v. Califano</u>, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. <u>See</u> <u>Tonapetyan</u>, 242 F.3d at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. <u>See</u> <u>id.</u> (citing <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998)).

The court agrees with plaintiff. The ALJ rejected Dr. Boggan's opinions because he found the doctor's report to be "incomplete." This finding triggered the ALJ's duty to develop the record with respect to the opinions expressed by Dr. Boggan. The ALJ failed to do so and the matter should be remanded to allow the agency to fully develop the record.

///

3.      Dr. Fernandez-Renedo

As to this source, the ALJ stated:

A Physical Residual Functional Capacity Questionnaire was completed by
endocrinologist M. Renedo, M.D. in October 2009.  Dr. Renedo indicated
she had treated the claimant in connection with his hormonal problems
only, and that Dr. Barragan had treated the claimant for osteoarthritis and
body pain.  Dr. Renedo diagnosed the claimant with hypothyroidism,
hypogonadism, osteoarthritis, and obesity.  It was the doctor's opinion that
the claimant could sit for a total of 30 minutes, stand for a total of 45
minutes, and could walk two blocks without requiring rest.  The doctor
also stated that exposure to wetness and humidity would worsen the
claimant's condition (Exhibit 18F).

* * *

. . .I give little weight to the opinion of Dr. Renedo who only treated the
claimant for hormonal problems, and did not evaluate or treat him for his
tumor or obesity (Exhibit 18F).  The doctor's assessment is therefore
incomplete.

CAR 16, 19.

According to plaintiff:

. . .The ALJ's misunderstanding of Plaintiff's disease of
acromegaly once again becomes evidence.  *His disease is a hormonal
problem*.  He has gigantism, not obesity.  She was treating his tumor
because it was mis-producing hormones. . . ." (emphasis in original).

As with Dr. Barragan, discussed above, the ALJ specifically found that Dr.

Fernandez-Renedo's was incomplete, triggering the duty to develop the record, which the ALJ

failed to do.  See Tonapetyan, 242 F.3d at 1150.  The matter should be remanded for further

development of the record.

4.      Dr. Ko

As to Dr. Ko, the ALJ stated:

Eric C. Ko, M.D., from Mercy UC Davis Cancer Center completed a
Physical Residual Functional Capacity Questionnaire form in February
2012.  He reported he had been seeing the claimant every 1-2 months since
March 2011 for prolactinoma status post resection and radiation;
hypogonadism; hypothyroidism; acromegaly; and congestive heart failure.
The doctor said the claimant suffered general arthralgia, weakness, and an
inability to concentrate due to these impairments.  The claimant had

multiple joint pains in his bilateral knees, and had developed depression because of his physical condition. It was his opinion the claimant experienced pain or other symptoms constantly, which were severe enough to interfere with the concentration and attention needed to perform simple repetitive tasks. The claimant was incapable of performing even low stress jobs due to poor concentration, multiple medications and their side effects. The claimant was able to sit for one hour at a time, for a total of less than 2 hours in an 8-hour workday, and walk less than 2 hours in an 8-hour workday. He must be permitted to shift positions at will, and he required unscheduled breaks of 20 minutes duration every hour. The claimant must elevate his legs at heart level 50% of the time. He was capable of rarely lifting and carrying less than 10 pounds. The claimant was able to rarely look down, and occasionally hold his head in a static position. He was precluded from crouching, squatting, and climbing ladders or stairs. The claimant could use his bilateral hands and fingers for twisting and fine manipulation 40% of an 8-hour workday, and use his arms for reaching 60% of the time during an 8-hour workday. He would likely miss about three days of work each month because of his impairments. (Exhibit 32F, pp. 2-8). Dr. Ko completed an Acromegaly Residual Functional Capacity Questionnaire in December 2013. He said the claimant's diagnoses were secreting pituitary macroadenoma, status post subtotal resection in 2008, and radiation completed in January 2009. The claimant had acromegaly and had been diagnosed with a pituitary tumor. The claimant's headaches; joint pain and limited mobility; shortness of breach; severe snorting due to upper respiratory obstruction; fatigue and tiredness, shortness of breath, and excessive height. He experienced essentially constant pain in his lumbosacral spine, cervical spine, thoracic spine, chest, hips, legs, and knees/ankles/feet. Dr. Ko said his disease was stable at this time. The doctor said the claimant had significant physical limitations, and would miss more than four days of work each month (Exhibit 34F).

At an August 2013 follow-up at Mercy UC Davis Cancer Center, the claimant reported his fatigue had improved with testosterone supplementation. He continued to have back, bilateral knee and bilateral foot pain. His medications for back pain made him feel "like a zombie," so he avoided taking them. He also had chronic sleep apnea, for which he was unable to obtain a CPAP because of lack of insurance coverage. . . . He was doing well, and there was no evidence of a recurrence of disease (Exhibit 33F, pp. 10-12).

* * *

. . .I accord some weight to treating physician Dr. Ko, who gave the claimant a less than sedentary residual functional capacity (Exhibits 32F, pp. 2-8; 34F). . . .

CAR 17-18, 19.

///

Regarding the ALJ's analysis of Dr. Ko's opinions, plaintiff observes:

> . . .His [Dr. Ko's] limitations include a need to take unscheduled breaks every hour for 20 minutes. Because the VE testified that a worker off-task for 20% of the time would be unemployable, this limitation alone establishes disability, if Dr. Ko's opinion is credited. In addition, he wanted his patient's legs to be elevated to heart level 50% of the time. The VE was never asked if a worker at a sedentary job would be allowed to do this. . . ."

Defendant offers no response regarding Dr. Ko.

The court finds that the ALJ's analysis of Dr. Ko's opinions fails to meet even the "specific and legitimate" test. The ALJ accorded "some weight" to Dr. Ko's opinions. By not according the doctor's opinions controlling weight, the ALJ necessarily accepted some of Dr. Ko's opinions and rejected others. The ALJ, however, does not state which of the numerous opinions expressed by Dr. Ko he rejects, or why, with specific references to evidence of record supporting rejection of a particular opinion. See Magallanes, 881 F.2d at 751-55. The matter should be remanded for a more detailed consideration of Dr. Barragan's opinions.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# IV. CONCLUSION

Based on the foregoing, the court concludes that the matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above. Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 24) be granted;

2. Defendant's cross motion for summary judgment (Doc. 27) be denied; and

3. This matter be remanded for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED: August 14, 2018

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE